**FIDELITY & COLUMBIA TRUST CO. v. LUCAS, Collector of Internal Revenue.**

**No. 1072.**

District Court, W. D. Kentucky.

July 11, 1931.

Humphrey, Crawford & Middleton, of Louisville, Ky., for plaintiff.

T. J. Sparks, U. S. Atty., and Frank A. Ropke, Asst. U. S. Atty., both of Louisville, Ky., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Wm. T. Sabine, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

DAWSON, District Judge.

The plaintiff in this case is seeking a refund of income taxes for the years 1917 to 1926, both inclusive. The material facts are as follows:

L. P. Ewald, a wealthy citizen of Louisville, died testate in 1909. The provisions of his will material to this controversy are the first, second, and fourth clauses thereof, which are as follows:

"First: I bequeath to the Fidelity Trust Company of Louisville, Kentucky, the sum of Three hundred thousand dollars ($300,-000) in trust, for my three children, Philip Louis, Helen Josephine and Sterling Donald, share and share alike, to hold the same on the trusts hereinafter declared.

"Second: I also devise and bequeath to the Fidelity Trust Company of Louisville, my house and lot situate on the east side of Third Street, between York and Breckinridge Streets, in the city of Louisville, together with all the furniture and appurtenances, for the use and benefit of my three children above named, on the trusts hereinafter declared.

"It is my will that the bequests and devises made in the first two clauses of my will, for the benefit of my children above named, shall constitute a first charge on my estate, and shall take precedence over all devises and bequests hereinafter made."

"Fourth: The rest and residue of my estate I devise and bequeath to the Fidelity Trust Company of Louisville, to hold the same, as well as the Three hundred thousand dollars mentioned in the first clause of this will, for the use and benefit of my three children above named, upon the following trusts, viz.:

"To apply so much of the income thereof as said Executor and Trustee may deem proper to the liberal maintenance and education of my said three children, until they severally arrive at the age of twenty-one years. To pay to each of them thereafter, and until they arrive at the age of twenty-five years, out of the income of my estate or their respective shares thereof, a sum not exceeding Ten thousand dollars per annum, and to pay to each of them thereafter, and in like manner, until they arrive at the age of thirty years, a sum not exceeding Fifteen thousand dollars per annum.

"I direct that when my eldest surviving child arrives at the age of thirty years, the entire estate then held in trust, shall be by said Trustee divided into equal shares amongst my surviving children, and the lawful issue of any deceased child, per stirpes.

"The share allotted to my daughter, Helen Josephine, shall be held in trust for her during her natural life, and at her death shall pass to her descendants, if any, otherwise to her surviving brother or brothers, or his or their descendants, per stirpes.

"If my sons, Philip Louis, and Sterling Donald, or either, shall attain the age of thirty years, said Trustee shall, as they severally attain said age, turn over to them one-half of the corpus of their several shares of my estate, and hold the other half in trust for them during their several lives, with remainder to their descendants, if any, otherwise, to their surviving brothers or sister or their descendants per stirpes.

"Any part of my estate received by either of my children because and by right of survivorship shall be held subject to the same trusts as the other estate devised to such child or children under this will.

"If any infant descendant of either of my children shall take any portion of my estate under my will, the said Trustee shall continue to hold the same for such infant until it becomes twenty-one years of age."

By a codicil the Columbia Trust Company was substituted for the Fidelity Trust Company as executor, trustee, and guardian, and the plaintiff, Fidelity & Columbia Trust Company, is the corporate successor, by merger, of the Columbia Trust Company and the Fidelity Trust Company. Plaintiff's corporate predecessor was appointed and qualified as executor and trustee under the will on August 3, 1909. Philip Louis Ewald became twenty-one years of age on March 5, 1917; Helen Josephine became twenty-one in 1919 (the record does not show the month of her birth); and Sterling Donald became twenty-one on July 9, 1922.

With the exception of the $300,000 referred to in clause 1 of the will, no actual separation of the trust estate, or the income therefrom, into three parts was made until 1926, when the eldest son, Philip Louis, became thirty years of age. The plaintiff as trustee, however, for each of the calendar year 1917 to 1926, both inclusive, made four separate income tax returns, one as trustee of the estate of L. P. Ewald, deceased, and one for each of the three children, Philip Louis, Helen Josephine, and Sterling Donald. It is fairly inferable from the petition that the plaintiff reported no taxable income as trustee of the estate of L. P. Ewald, deceased. As trustee for each of the children for each of the years involved, plaintiff reported one-third of the net income of the entire trust estate, although for each of the years each of the children had actually received a much smaller sum.

Upon an audit and review of these returns by the Commissioner of Internal Revenue, it was determined that only the amount actually paid to or for the account of the children in each of the years involved was taxable income to them, and that the balance of the net income derived from the trust estate for each of the years involved should have been reported as income of the estate of L. P. Ewald and taxed as such. The tax on this basis was accordingly assessed against the plaintiff, as trustee of the estate of L. P. Ewald, for each of the years involved, and the amounts thus arrived at for the years 1917, 1918, 1919, and 1920 were paid during the years 1923 and 1924. The tax assessed against the estate for the year 1921 was paid in 1926; the taxes for the years 1922, 1923, and 1924 were paid on January 21, 1927, and the taxes for the years 1925 and 1926 were paid in October, 1928. Claims for refund were regularly made and rejected. Consistently with his view of the case, the commissioner ruled that for each of the years involved each child was entitled to a refund of the difference between the tax actually paid by such child and the amount payable had such child reported only the income actually received each year.

In the latter part of January, 1927, in an action then pending in the circuit court of Jefferson county, Ky., the trustee moved the court to refer the case to a commissioner, for the purpose of settling its accounts and for a construction of the will. The matter was so referred, and the commissioner made his report on June 11, 1927. That part of the report dealing with the construction of the will is as follows: "Being of the opinion that under a proper construction of the testator's will he intended his children to share equally in his estate, your commissioner holds that beginning with the year 1917 the net income from the estate of L. P. Ewald should have been divided into three equal parts, one for each of the testator's children, and then each child's interest charged with what that child actually received, and the balance carried to that child's separate trust account." On the same day Philip Louis Ewald, Helen Josephine Ewald, and Sterling Donald Ewald, all of whom were more than twenty-one years of age, and also the plaintiff, as trustee of the estate of L. P. Ewald, entered written motions to confirm the commissioner's report, and on the same date a judgment was entered by the court, confirming the report and adopting the commissioner's construction of the will.

The applicable Revenue Acts are those of 1916, as amended by the act of 1917; 1918, 1921, 1924, and 1926. By each of these acts trust estates are made taxable entities, and the trustee is charged with the duty of making the return and paying the tax. Each of these acts imposes a tax on trust estates on "income held for future distribution under the terms of the will or trust." Section 2(b), Revenue Act of 1916 (39 Stat. 757); section 219(a)(3), Revenue Acts of 1918 and 1921 (40 Stat. 1071; 42 Stat. 246); section 219(a)(1), Revenue Acts of 1924 and 1926 (43 Stat. 275; 44 Stat. 32 [26 USCA § 960 note]). Under each of the acts referred to the fiduciary is allowed as a deduction the amount of any income from the trust estate

properly paid or credited to the beneficiary during the taxable year.

In view of the provisions of the acts referred to, it is apparent that a solution of this case involves a construction of the Ewald will. If, under this will, the testator intended that for the years prior to the time the eldest child became thirty years of age all of the income of the trust estate remaining at the end of each year, after making provision for the children according to the fourth clause of the will, was to be held as a part of one trust estate until a division of that estate upon the eldest surviving child becoming thirty years of age, then it was the duty of the plaintiff to report this surplus income each year as income of the general trust estate, and pay the taxes thereon, as the trustee was required to do by the commissioner. If, on the other hand, such was not the intention of the testator, but he intended—as contended by the plaintiff and as decided by the Jefferson circuit court—that the income each year was to be divided into three separate trusts, one for each child, respectively, and the income expended for each child during such year charged against the child's estate and the balance carried forward into such child's individual trust account, then the plaintiff is entitled to recover.

■ Therefore, we may disregard the manner in which the trustee handled this yearly surplus income. The vital question is: How did L. P. Ewald by his will intend it to be handled? This intention must be gathered from the will itself.

■ At the very threshold of this inquiry, however, I am met with the contention of the plaintiff that this court is not free to exercise its independent judgment in construing the will, but that I am conclusively bound by the construction thereof made by the Jefferson circuit court in its judgment of June 11, 1927. While I recognize that as a general rule the decree of a state court, as to the meaning and effect of a will of one of that state's residents, is binding upon the federal court, I do not think that rule has any application under the facts disclosed by this record. I am satisfied that the judgment relied upon must be regarded as nothing more than an agreed judgment. No other construction of the will than that contended for by the plaintiff was suggested to the commissioner in that case, and when the commissioner's report was filed, the plaintiff, as trustee, and the three children, each of whom was then of age, asked the court to adopt the commission-

er's report, including his construction of the will. This the court did, by its judgment entered on the same day. The court in this judgment was careful to point out that the trustee and the three children had each entered a motion that the report be approved, and that they were the only parties interested in the estate. The obvious deduction is that the circuit court did the very natural thing of adopting the commissioner's report, when all the interested parties were present and asking that it be adopted. The government was not represented in the proceeding, although the trustee and the three children each knew that the government was contending for an entirely different construction of the will, and, on the strength of that contention, had already assessed taxes against the trustee of the L. P. Ewald estate in large amounts for each of the years from 1917 to 1924, both inclusive, and had enforced payment thereof; and they knew that the trustee was demanding a refund of these taxes based upon the construction of the will which they were asking the circuit court to adopt. They likewise knew that a similar assessment would be made by the government for the years 1925 and 1926. So far as this record shows, the controversy between the government and the trustee as to the construction of the will was in no way brought to the attention of the circuit court.

Under these circumstances it would shock one's sense of justice to hold that the government is concluded by the state court judgment. Furthermore, it is well settled that a decision of a state court, establishing a local rule of property or, construing a state statute or a contract made after the rights of a litigant in a federal court suit had accrued, and in a case to which he was not a party, is not binding upon the federal court. I know of no reason why this rule should not apply to the construction of wills. See Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 S. Ct. 140, 54 L. Ed. 228, and authorities there cited.

I therefore conclude that I am not only free, but it is my duty, to make my own construction of the will in this case.

The third clause of the will enumerates nine specific bequests of $15,000 each to persons other than the three children of the testator. All the residue of the estate was left in trust to the three children under the terms of the first, second, and fourth clauses of the will. It is apparent that the thing uppermost in the mind of the testator was to make provision for his three children. Therefore, in

the first clause he provided a trust fund of $300,000 for his three children, "share and share alike, to hold the same on the trusts hereinafter declared." The "trusts hereinafter declared" are set out in the fourth clause of the will. In the second clause he devised the residence on Third street and the household furniture therein, in trust "for the use and benefit of my three children above named on the trusts hereinafter declared"; and to make certain that the provisions for his children made in the first and second clauses of the will should not be diminished by the bequests contained in the third clause, the testator specifically declared "that the bequests and devises made in the first two clauses of my will for the benefit of my children above named shall constitute a first charge on my estate and shall take precedence over all other devises and bequests hereinafter made." Therefore, the bequests in the third clause in no event could be effective unless at the testator's death the net estate was in excess of the property disposed of in the first and second clauses. The first paragraph in the fourth clause disposes of any residue of the estate left after satisfying the first, second, and third clauses of the will, and the succeeding paragraphs of the fourth clause set out the trusts governing the $300,000 disposed of in clause 1 and the residue of the estate disposed of in clause 4.

It seems quite clear to me that it was not the intention of the testator that the $300,000 disposed of in the first clause of the will should constitute a separate and distinct trust fund from the residue of the estate disposed of in the fourth clause. He intended that the $300,000 and any residuary estate should constitute one trust fund, under the terms and conditions set out in the fourth clause. The testator specifically provided that not only the residuary estate, but the $300,000 as well, should be held under the trusts set out in the fourth clause. Having required that these two funds should be held under exactly the same trusts, he certainly did not intend that they should be handled separately. They were treated separately in the will for the simple reason that the testator wanted to be sure that at least $300,000 would be available for the use of the children before any of the other bequests made in the will to his other kinsmen should be paid. After making provision for the liberal maintenance and education of each of the three children during their minority, the fourth clause of the will next directs the trustee "* * * *. to pay to each of them thereaft-

er, and until they arrive at the age of twenty-five years, out of the income of my estate, or their respective shares thereof, a sum not exceeding Ten Thousand Dollars per annum, and to pay to each of them thereafter, and in like manner, until they arrive at the age of thirty years, a sum not exceeding Fifteen Thousand Dollars per annum."

I see nothing in the will evidencing any intention on the part of the testator to charge his children with the sums expended for their benefit during their minority, nor with the sums directed to be paid to them from their 21st birthday to the date when the estate was to be divided into three parts, which was the date when the eldest living child became thirty. On the contrary, the silence of the will on this subject, considered in connection with the fact that the only specific provision for a division of the trust estate is the one directing the division to be made when the eldest living child became thirty years of age, would indicate that the testator intended that all expenditures directed to be made in behalf of his children prior to the date of division should be treated as a general charge against the entire trust estate. Of course, this construction of the will is to the advantage of the eldest child, for the reason that all payments made to him up to the date of the division of the estate on his thirtieth birthday would be charged against the entire trust estate, whereas the payments made to the other two children between the time the estate was divided on the thirtieth birthday of the eldest child and their thirtieth birthday would be charged against their individual parts of the estate, but inequality between children affords no reason for the court disregarding the plain provisions of a will.

The plaintiff makes much of the phrase "or their respective shares thereof" in the paragraph of the will last above quoted. It is argued that this language clearly indicates that it was the intention of the testator that from the time the eldest child arrived at the age of twenty-one years until he became thirty years of age, the income from the trust estate should each year be divided into three equal parts and the amount paid to each child under the provisions of the will should be charged to his part. It is suggested that unless such a construction is given the will, the phrase referred to is meaningless. I fully realize that it is the duty of the court to give some meaning to every word used in an instrument, if such can be done consistently with its other provisions; but if

the will is construed according to plaintiff's contention, then the phrase, "out of the income of my estate," appearing in the quoted paragraph and in immediate connection with the phrase relied upon by the plaintiff, would be entirely meaningless. The will should be construed, if possible, so as to give meaning to both phrases, and I think the construction here suggested accomplishes this result.

Philip Louis Ewald became thirty years of age on March 5, 1926. On that date it became the duty of the trustee to divide the entire estate into three equal parts. Up to that time the sums directed by the will to be paid to each of the children were paid out of the income of the entire trust estate. Payments under clause 4 of the will were to cease when the children arrived at thirty years of age. Helen did not become thirty years of age until 1928, two years after the division of the estate, and Sterling did not become thirty years of age until more than five years after the division of the estate. Therefore, literally, the sums paid to the two younger children under the last-quoted paragraph of clause 4 of the will were paid from the income of the entire trust estate, or from the income of their respective shares. The sums paid prior to the division of the estate on March 5, 1926, were paid from the income of the entire trust estate. The sums paid to them after that date until they became thirty years of age were paid out of the income of their respective shares of the estate. Inasmuch as Sterling's twenty-fifth birthday was July 9, 1926, any sum paid to him during his twenty-fourth year prior to the division of the estate on March 5, 1926, was chargeable to the income of the entire trust estate, and any sum paid to him under the will for the remainder of his twenty-fourth year was chargeable against the income of his one-third of the estate.

From these facts it will be seen that the construction of the will here suggested gives effect to both of the phrases referred to, and I think this construction is in accord with the intention of the testator.

I am therefore of the opinion that the $300,000 and the residuary estate, together with all income therefrom, were intended by the testator to be treated as one trust estate, to be held as one such estate until the eldest living child arrived at the age of thirty years, and that until that time the payments directed by the fourth clause of the will to be made to and in behalf of each of the children were intended by the testator to be treated as general charges against the income of the entire trust estate. Such being the case, it was the duty of the plaintiff, as trustee of the estate of L. P. Ewald, for each of the years 1917 to 1925, both inclusive, to report and pay taxes on all of the income of such estate, except such sums as were paid to or in behalf of the three children of the testator under the terms of the will. The amounts thus actually paid to each of the children under the terms of the will should have been reported by the trustee as income received by it as trustee of the child to whom it was paid. A similar report should have been made by the plaintiff as trustee of the estate for income received for the calendar year 1926, from January 1st to March 5th, when the entire estate was divided under the terms of the will.

A finding of facts and judgment in conformity to the views herein expressed may be prepared and presented for entry.