## EISENMENGER v. COMMISSIONER OF INTERNAL REVENUE.

No. 12828.

Circuit Court of Appeals, Eighth Circuit.

Oct. 23, 1944.

Pierce Butler, Jr., of St. Paul, Minn. (Jack C. Foote, Edgar G. Vaughan, and Doherty, Rumble, Butler, Sullivan & Mitchell, all of St. Paul, Minn., on the brief), for petitioner.

Robert Koerner, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to the Atty. Gen., and Helen R. Carloss, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States determining a deficiency in petitioner's income taxes for the calendar years 1936 and 1937. The facts are not in dispute. The issue is whether dividends received during the tax-

able years by a trust, in the form of deferred debenture notes, constituting income for the years involved, were distributable by the trust to the petitioner.

On December 31, 1931, Charles W. Eisenmenger, husband of petitioner, created a trust, the corpus of which consisted of 200 shares of the common stock of the Chamar Investment Company. The settlor, the petitioner, and Ottilie Eisenmenger were named as trustees, and petitioner was named a beneficiary in the trust. The trust instrument provided in part as follows: "The trustees shall pay to Marie Anna Eisenmenger, the wife of the grantor, for and during the term of her natural life, annually or as received, the net cash income received by them from the said shares of stock."

On December 28, 1936, a resolution was adopted by the Board of Directors of the Chamar Investment Company, declaring a dividend of $40,000, of which 10 per cent was to be paid in cash and the balance to be paid in 5 per cent subordinated debenture notes, payable on or before December 31, 1946. Pursuant to this resolution the trustees received as dividends on the stock held in trust $1,600 in cash and a 5 per cent subordinated debenture note in the amount of $14,400, dated December 28, 1936, and payable on or before December 31, 1946. The trustees retained the note and deposited the cash received to the account of the trustees, but no distribution of any portion of the cash or notes was made to the beneficiary of the trust in 1936.

On December 29, 1937, the Board of Directors of the Chamar Investment Company adopted a similar resolution declaring a dividend of $35,000, payable to the stockholders of record December 29, 1937, of which 15 per cent was to be paid in cash and the remaining 85 per cent was to be paid in 4 per cent subordinated debenture notes of the company. In due course the trustees received as dividends on the stock held in trust $2,100 in cash and a 4 per cent subordinated debenture note in the amount of $11,900, payable on or before December 31, 1946. The trustees retained the note and deposited the cash so received to the account of the trustees, together with an item of $720, making a total deposit of $2,820. This item of $720 represented interest on the 5 per cent note issued to the trustees as a dividend in 1936. No distribution of any portion of the cash or the note was made to the beneficiary of the trust in 1937.

The trustees filed their fiduciary income tax return for the year 1936 and reported the receipt of the dividends consisting of both the cash and the subordinated debenture note. No credit was taken on the return for distributions to the beneficiary, and the trustees paid an income tax of $1,290 upon the reported basis as the 1936 income tax. They also prepared and filed in due course their fiduciary income tax return for the year 1937, reporting the receipt of dividends in the amount of $14,000 and $720 interest, and they paid an income tax of $1,247.75 on this amount as the 1937 income tax. The fair market value of the debenture notes received as dividends in 1936 and 1937 respectively was the face value of the notes. Petitioner in her individual income tax returns for the years 1936 and 1937, not having received any income from the trust, did not include any such income from the trustees for either of such years.

Respondent, in the deficiency notice dated June 7, 1939, included as additional income to petitioner for the year 1936 the sum of $16,000, and for the year 1937 the sum of $14,675. These amounts included the dividends declared in cash and notes by the Investment Company for the years involved and the interest of $720 received by the trust during 1937, respondent expressing the view that the notes and cash received by the trustees during the years 1936 and 1937 as dividends were income distributable to the beneficiary of the trust. On petition for redetermination of the deficiency, the tax court sustained the contention of the commissioner. On June 2, 1941, the trustees under the trust filed in the District Court of Ramsey County, Minnesota, a petition for a confirmation of their appointment as trustees, and on the same date the court entered an order confirming the appointment. They also filed a petition requesting a construction of the trust instrument, and on June 5, 1941, the court entered its order for hearing of the petition and prescribed the notice to be given. Hearing was had pursuant to the order and notice on July 3, 1941, and the court entered its findings of fact and conclusions of law and judgment. The court found, among other things, "That during the years 1936, 1937, 1938, 1939, and 1940, the trustees received as income of the trust, dividends on the shares of stock of Chamar

Investment Company constituting the corpus of the trust in the form of cash, dividends on said stock in the form of subordinated debenture notes, and interest on such debenture notes, in the form of cash."

The court concluded as a matter of law that:

"1. The words 'net cash income' as used in Section 1 of the Charles W. Eisenmenger Trust No. 1 were intended by the grantor of the trust to, and do, refer solely to income received by the trustees in the form of cash, and Marie Anna Eisenmenger, the beneficiary named in said Section 1, is entitled to receive only such income as may be received by the trustees in the form of cash.

"2. That the interest payments received in cash by the trustees on the subordinated debenture notes received by the trustees as dividends on the shares of stock constituting the original corpus of the trust is cash income subject to distribution to Marie Anna Eisenmenger pursuant to the provisions of Section 1 of said trust.

"3. That the use of the word 'net' to modify the term 'cash income' as used in Section 1 of said trust was intended by the grantor of the trust to, and does authorize and direct the trustees to retain out of the cash income received by them during any year such amount as the trustees may reasonably estimate to be necessary for the payment of income taxes on the non-distributable items of income not in the form of cash received by them during such year, provided that when such income taxes are actually determined, any excess of the amount theretofore retained by the trustees out of the cash income of the trust for the payment of taxes over the amount actually needed is distributable to Marie Anna Eisenmenger under the terms of Section 1 of said trust. Further, the term 'net cash income' was intended to, and does, authorize the trustees to pay the current expenses of the trust out of the cash income received by them, and the amount necessary to pay such expenses is therefore not distributable under Section 1 of said trust to Marie Anna Eisenmenger."

The entry of this judgment being called to the attention of the tax court by motion, a rehearing was granted. On the rehearing the court adhered to its decision as originally entered.

In seeking review of the tax court's decision petitioner contends that (1) the

subordinated debenture notes received by the trustees as dividends did not, under the terms of the trust instrument, constitute income distributable to the petitioner within the meaning of Section 162 of the pertinent Act; (2) the tax court erred in failing to follow and give effect to the construction placed upon the trust instrument by the District Court of Minnesota.

Section 162 of the Revenue Act, 26 U.S. C.A.Int.Rev.Code, § 162 so far as here applicable, provides as follows:

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

$$* \quad * \quad * \quad * \quad *$$

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries * * *, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. * * *"

■ Under this section of the Revenue Act of 1936, petitioner was liable for an income tax on all income which she was entitled to receive during the years involved from this trust whether she in fact received it or not. St. Louis Union Trust Co. v. United States, 8 Cir., 143 F.2d 842. There is no claim that the dividends did not constitute income arising from this trust. The tax court held as a matter of law, the facts being undisputed, that the dividends received by the trustees were, within the meaning of the trust instrument, "net cash income," and hence distributable to petitioner. Dividends are not necessarily payable in cash. Valentine-Clark Corp. v. Commissioner, 8 Cir., 137 F.2d 481; United States v. Dakota Tractor & Equipment Co., 8 Cir., 125 F.2d 20. They may, as here, be distributions in the form of executory promises of the corporation. Unless petitioner was entitled to receive the debenture notes, then, manifestly, they would not be taxable income. She was not responsible for the form or character of the dividends as declared by the board of directors of the Chamar Investment Company. Whether or not she was entitled to receive them was dependent upon the above quoted provision of the trust instrument. The petitioner, as well

as the grantor of the trust, is and at the time of the execution of the trust instrument was a resident and citizen of Ramsey County, Minnesota. The trustees and the beneficiary had apparently construed this instrument to mean that petitioner was entitled to have turned over to her only the net cash income received by them from the shares of stock and that the debenture notes were not the equivalent of cash. When the tax court held the petitioner liable for the entire income, whether issued in cash or notes, it naturally became a matter of concern to the trustees. They had paid the income tax on this income, and, if accepting the views of the tax court as to the proper construction of the trust instrument, they should turn over to petitioner these notes, then manifestly they would be answerable to remaindermen who were named in article 5 of the same trust instrument, the ultimate distributees of the corpus of the trust and accrued income. The construction of the trust instrument by the tax court was of no binding effect upon the remaindermen nor upon the trustees. The construction of the trust instrument involved no federal question nor federal tax law.

In taking proceedings for a construction of the trust instrument by the state court, the trustees proceeded under Sections 501.33, 501.35 and 501.36, 2 Minn. Stats. 1941. Section 501.33 provides that: "Upon petition of any person appointed as trustee of an express trust by any will or other written instrument, or upon petition of any beneficiary of such trust, the district court of the county wherein such trustee resides or has his place of business, shall consider the application to confirm the appointment of the trustee and specify the manner in which he shall qualify. Thereafter such district court shall have jurisdiction of such trust as a proceeding in rem."

Section 501.35 provides that: "Any trustee whose appointment has thus been confirmed at any time thereafter may petition the court for instructions in the administration of the trust or for a construction of the trust instrument, or upon or after the filing of any account, for the settlement and allowance thereof. Upon the filing of such petition the court shall make an order fixing a time and place for hearing thereof, unless hearing has been waived in writing by the beneficiaries of such trust. Notice of such hearing shall be given by publishing a copy of such order one time in a legal newspaper of such county at least 20 days before the date of such hearing, and by mailing a copy thereof to each party in interest then in being, at his last known address, at least ten days before the date of such hearing or in such other manner as the court shall order and if such court shall deem further notice necessary it shall be given in such manner as may be specified in such order. Upon such hearing the court shall make such order as it deems appropriate, which order shall be final and conclusive as to all matters thereby determined and binding in rem upon the trust estate and upon the interests of all beneficiaries, vested or contingent, except that appeal to the supreme court may be taken from such order within 30 days from the entry thereof by filing notice of appeal with the clerk of the district court, who shall mail a copy of such notice to each adverse party who has appeared of record."

Section 501.36 provides for the appointment of a guardian of any minor or otherwise incompetent person upon whom the court has ordered personal service.

■■ As already observed, the question of what rights the petitioner acquired under this trust instrument does not present a federal question but a matter of state law. Assuming that the state court acquired jurisdiction, its decision is binding upon all the parties to the instrument. That court has determined that the petitioner has no interest in the debenture notes but that these notes are the property of the trust. She has not, of course, received them, and under the state law as determined in the proceeding referred to, she can not receive them. The decision of the state court on the question of the ownership of this property was, we think, conclusive upon the tax court and upon this court. Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Hubbell v. Helvering, 8 Cir., 70 F.2d 668; Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109; Huddleston v. Dwyer, 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. ——.

In Blair v. Commissioner, supra, it is said that [300 U.S. 5, 57 S.Ct. 333, 81 L.Ed. 465]: "The one who is to receive the income as the owner of the beneficial interest is to pay the tax. If under the law governing the trust the beneficial interest is assignable, and if it has been as-

signed without reservation, the assignee thus becomes the beneficiary and is entitled to rights and remedies accordingly."

In the Blair case the beneficiary of a trust had assigned the income from such trust to his children prior to the tax years. The question involved was the effectiveness of the assignment. As in the instant case, the question first arose when the commissioner ruled that the income was taxable to the beneficiary. After the matter had been decided adversely to the beneficiary by the Circuit Court of Appeals, 7 Cir., 83 F.2d 655, the trustees brought suit in the Superior Court of Cook County, Illinois, to obtain a construction of the trust instrument. The Illinois court decided that the trust was not a spendthrift trust and upheld the assignments. The matter finally reached the Supreme Court. The government contended that the judgment of the state court was not controlling. In the opinion it is, among other things, said:

"The supervening decision of the state court interpreting that law in direct relation to this trust cannot justly be ignored in the present proceeding so far as it is found that the local law is determinative of any material point in controversy. Compare Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Hubbell v. Helvering, 8 Cir., 70 F.2d 668.

"Second. The question of the validity of the assignments is a question of local law. The donor was a resident of Illinois and his disposition of the property in that State was subject to its law. By that law the character of the trust, the nature and extent of the interest of the beneficiary, and the power of the beneficiary to assign that interest in whole or in part, are to be determined. The decision of the state court upon these questions is final. * * * It matters not that the decision was by an intermediate appellate court."

Some attack is sought to be made upon the proceeding culminating in the findings and judgment by the state court. It is said that the commissioner was not made a party. He was not an interested party under this trust instrument. Had he been made a party the government would not have been bound. There was, however, submitted to the state court the entire record and briefs in the tax proceeding and no further presentation was made. It is argued in the government's brief that the proceeding was collusive, but the tax court did not so find and there is no basis for such contention. The tax court held that it was nonadversary. The proceeding was statutory and declared by the statute to be a proceeding in rem. We can not say that the proceeding provided by the statute was lacking in due process. It is urged that the notice fixing the time and place for hearing was not published. The statute, however, does not prescribe publication as the only method of giving notice, but provides that it may be given "in such other manner as the court shall order." The court in the instant case ordered that the notice of hearing be given by mailing a copy of the petition and of the order to beneficiaries of the trust by registered mail. Proof of such service was made and the court's findings recite that, "Service of the petition and order for hearing having been duly made on the beneficiaries named in said trust." Other irregularities in the proceeding are suggested but at most they are irregularities and do not go to the jurisdiction of the court.

Being of the view that the judgment of the District Court of Ramsey County, Minnesota, entered in the proceeding taken before it for a construction of the trust instrument and for instructions to the trustees, is conclusive on us, we pretermit any discussion of the question of the construction of the trust instrument.

The judgment of the tax court is therefore reversed and the cause remanded for the entry of judgment consistent herewith.