Minnie GORDON, Milton Melvin Gordon and Leah Gordon Seiffer, Residuary Devisees, Legatees and Distributees, under the will of Hyman Gordon, deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 10250.

United States District Court
W. D. Missouri, W. D.

June 30, 1958.

Rich & Rich, Kansas City, Mo., for plaintiffs.

Edward L. Scheufler, U. S. Atty., O. J. Taylor, Asst. U. S. Atty., Kansas City, Mo., for defendant.

R. JASPER SMITH, District Judge.

This is an action by the residuary legatees of Hyman Gordon to recover

some $158,499.38 paid as estate taxes with respect to the estate of Hyman Gordon, who died November 24, 1950. Under his will, decedent left one-half of the residue of his estate to his son and daughter as trustees to pay the income to his widow, Minnie Gordon, for life.

Paragraph XX of the will provided in part as follows:

"The trust hereby created shall commence immediately upon termination of administration of my estate.

"In the event that the income from this trust shall be insufficient to meet the living expenses or other requirements of said Minnie Gordon, she shall be entitled to withdraw such sums out of the corpus of this trust as may be required from time to time in her discretion.

"Upon the death of my said wife, Minnie Gordon, the remaining principal of this trust, together with all accumulated income thereof, if any, shall pass in accordance with the Last Will and Testament of my said wife to my said children, Leah Gordon Seiffer and Milton Melvin Gordon, in such proportions as my said wife considers wise as expressed in her said will. In the event that said Minnie Gordon shall fail to make a will, then the remaining principal of this trust and the accumulated income thereof, if any, shall be divided equally between my said children, Leah Gordon Seiffer and Milton Melvin Gordon, or their survivors."

Decedent's Federal Estate Tax Return claimed the marital deduction provided by Section 812(e) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 812(e), with respect to the one-half of the residue of the estate left in accordance with paragraph XX of the will. In February, 1955, Milton Gordon, as executor of the estate, transferred one-half of the residue of the estate to himself and to his sister as trustees under paragraph XX of the will. Milton Gordon, Leah Gordon Seiffer and Minnie Gordon, the widow, signed an agreement agreeing to pay any federal estate taxes owed by the estate, and thereupon the Probate Court of Jackson County, Missouri, entered an order discharging the executor.

On February 15, 1955, the Internal Revenue Service sent a ninety-day letter proposing to disallow the marital deduction with respect to the aforesaid property. On February 16, 1955, the son and daughter, as trustees under the will, filed suit in the Circuit Court of Jackson County against the widow, themselves individually, and against their children, alleging that from a time shortly after decedent's death the widow had been demanding the property which was now in trust and claiming that she had an absolute right thereto. After a hearing the Circuit Court entered findings of fact and conclusions of law and decreed that the trustees should convey the trust property to the widow.

The issue encompassed by the first count of plaintiffs' complaint is whether the Commissioner of Internal Revenue correctly disallowed the marital deduction with respect to the one-half of the residue which passed under paragraph XX of the will.

On January 5, 1949, decedent made gifts of $6,000 each to his daughter, her husband and his daughter's child. On October 10, 1950, he made gifts of $6,000 each to his daughter, her husband, her child, his son, his son's wife, and his son's two children. The issue tendered in Count IV of the complaint is whether the Commissioner of Internal Revenue correctly determined that these transfers by the decedent in 1949 and 1950 were made in contemplation of death within the meaning of Section 811(c) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811(c) (1) (A).

In the action in the Circuit Court of Jackson County, referred to above, decedent's son, Milton Gordon, incurred attorneys fees for the attorney who

represented the son, his wife and their children, and the daughter, her husband and their children. These fees were paid by Milton Gordon and amounted to $500. In addition, he drew a check on his bank account as executor to pay an attorneys fee to the attorney appointed by the Circuit Court of Jackson County to represent unborn children. He also paid $35.85 as the costs of the state court action. Finally, all of the plaintiffs in this case will incur a legal expense for the services of Rich and Rich, Attorneys, in the state court action, in prosecuting this claim for refund, and in presenting and trying this case. It has been stipulated that the fee will be ten per cent of the amount recovered and that this fee is reasonable. The third issue presented in the complaint is whether each of the foregoing amounts is a proper deduction from the gross estate of Hyman Gordon in arriving at a net taxable estate for Federal Estate Tax purposes.

### Count I.

The Circuit Court of Jackson County, Missouri, in its decree, held in part as follows:

\* \* \* \* \* \*

"2. The corpus and all accumulations of the trust created by Hyman Gordon in his Last Will and Testament are now and since December 1, 1950, have been, the sole, separate and absolute property of defendant, Minnie Gordon, free of any of the terms and conditions of said trust.

"3. That at all times since the death of Hyman Gordon on November 24, 1950, the defendant, Minnie Gordon, has had the right to demand and receive the entire principal of said trust estate and all accumulations thereon under all circumstances and in all events as her sole, separate and absolute property, free of any of the terms of said trust and free of any right, title, interest or claim of any contingent beneficiary of said trust estate or of plaintiffs or of any other defendant herein, including the unborn heirs of Hyman Gordon.

"4. That neither plaintiffs, as Trustees of said trust estate, nor any of the other defendants herein or any other persons whomsoever, have now, or since the death of Hyman Gordon, ever had, any right to limit or restrict the right of Minnie Gordon to receive said entire trust estate as her sole, separate and absolute property, free of all of the terms and conditions of said trust whatsoever as she, in her sole discretion, may have desired, or may now desire. \* \* \*."

The decree further directed the transfer of the property to the widow.

The sole issue here is whether the property, which the state court decreed to the widow, qualifies for the marital deductions.

There is no showing in the record before me that the proceeding in state court was anything other than an adversary proceeding. No collusion is proved, although it was alleged in defendant's answer. Under these circumstances, we are bound by the state court's determination of property rights; and notwithstanding defendant's claim that good faith under the circumstances must be affirmatively shown, we proceed on the premise that the decree of the state court, determining property rights, is entirely valid. It is no function of this Court to construe or determine the interests or estate acquired by Minnie Gordon under decedent's will. We do not act as appellate courts to review state court decisions on property interests or property rights of beneficiaries under wills, and when a state court of competent jurisdiction has determined those property rights, that determination is binding on us. There can be no question of this. See Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Gallagher v. Smith, 3 Cir., 223 F. 2d 218; Pitts v. Hamrick, 4 Cir., 228

F.2d 486; Eisenmenger v. Commissioner of Internal Revenue, 8 Cir., 145 F.2d 103, 156 A.L.R. 741.

Defendant, by exhaustive briefs, skillfully seeks to avoid the blunt implications of this rule—urging that the widow's interest was a "terminable interest" within the meaning of Section 812(e) (1) (B) of the code, in that the determination of this question must be made as of the date of decedent's death, and that her interest under the will was less than fee simple; and that her interest does not come within the special exception to the terminable interest rule provided in subparagraph (F) of Section 812(e) (1), since she was not, as is alleged, entitled to all the income for life and that her power to entrench upon corpus was not exercisable in all events because it had to be exercised in good faith.

■ As to this we can only look to the state court decree. Under it, " * * at all times since the death of Hyman Gordon * * * Minnie Gordon * * had the right to demand and receive the entire principal of said trust estate and all accumulations thereon under all circumstances and in all events as her sole, separate and absolute property, * * *." That right is a right in fee simple, effective from the moment of decedent's death, including right to income, and with the right to entrench upon corpus in all events. The fact that the decree may be contrary to the ruling I would make if this Court was construing the instrument is of no consequence whatever. The construction has been made, by a court charged with the responsibility of making it (as ours is not); that decision becomes the law of Missouri as it relates to the particular estate; and the question is closed.

Under those circumstances, only one judgment is possible. The property qualified for the marital deduction. The Commissioner's action in disallowing the deduction with respect to the one-half of the residue which passed under paragraph XX of the will was improper.

Plaintiffs are entitled to the relief prayed for in Count I.

## Count IV.

Plaintiffs urge that the gifts made in 1949 and 1950 were not made in contemplation of death within the meaning of Section 811(c) (1) (A) of the Internal Revenue Code of 1939 for the reason that there is shown a clear policy on the part of decedent of making substantial gifts to members of his family dating back to 1942. In this connection, evidence was presented showing family gifts of one kind or another for 1942, 1943, 1944, 1945, 1946, 1947, 1948, 1949 and 1950. Furthermore, there was evidence that decedent was a vigorous man who would neither discuss nor consider death; that he had purchased a considerable amount of new clothing; that he had made his customary reservations for himself and his wife at a winter resort; that he was aggressive and optimistic, and by none of his actions demonstrated any thought of death.

On the other hand, defendant's evidence was to the effect that the health of decedent was bad in 1949 and 1950; that in 1945 he was treated for a stroke, as a result of which he was hospitalized; that he had generalized arteriosclerosis and a sensoryaphasia, i. e., the inability to pronounce certain words; and that the arteriosclerosis was a major contributing cause of death. There was evidence that decedent knew of his condition—that he "was a man who did not minimize his symptoms; he wanted them relieved right away and when he had distress, he rang the bell."

Other evidence indicated that the gifts extending from 1942 were not necessarily a part of a long-range policy of gift making. Some of them were special as, for example, the gift to his daughter in 1947 to buy a house—equalizing, in effect a gift to his son many years earlier for the same purpose. Others followed shortly after attacks of illness.

■■ Under the statute, the plaintiffs have the burden of producing evi-

dence and the burden of persuasion that the transfers were not in contemplation of death. First Trust and Deposit Co. v. Shaughnessy, 2 Cir., 134 F.2d 940. And even though there are some life motives for a transfer, if a death motive was a substantial motivation the transfer is in contemplation of death within the meaning of the statute. Farmers' Loan and Trust Co. v. Bowers, 2 Cir., 98 F. 2d 794, certiorari denied 306 U.S. 648, 59 S.Ct. 589, 83 L.Ed. 1047. It is not necessary that the government prove that he feared immediate death at the time he made the transfers. The phrase "in contemplation of death" does not require such proof. United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867; I Paul, Federal Estate and Gift Taxation, Section 6.18, 271.

It is my conclusion that plaintiffs have not sustained their burden of persuasion here, and it must be ruled that the gifts made in 1949 and 1950 were made in contemplation of death within the meaning of Section 811(c) (1) (A) of the Internal Revenue Code of 1939.

### Count V.

Section 812(b) (2) of the Internal Revenue Code of 1939 reads in part: "For the purpose of the tax the value of the net estate shall be determined * * * by deducting from the value of the gross estate * * * such amounts * * * (2) for administration expenses, * * * as are allowed by the laws of the jurisdiction * * * under which the estate is being administered."

Plaintiffs' position is that even though the expenses in controversy were not in fact paid after order of approval by the Probate Court of Jackson County, Missouri, they were in fact expenses which could have been allowed if the estate had remained pending in the Probate Court, and that since, as plaintiffs aver, deduction of expenses of the character mentioned here is allowed by the laws of Missouri in normal course of probate, no penalty should be exacted for closing an estate prior to the termination of all tax litigation. Defendant, on the other hand, defines the term, "allowed" in its restrictive sense, requiring formal probate allowance before the deduction may be claimed.

Reason and justice requires that the language, "as are allowed by the laws of the jurisdiction" be construed by its commonly accepted meaning. Applying that test, the language must be construed to mean, "as are authorized or permitted by the laws of the jurisdiction." The construction urged by defendant, limiting the meaning to those expenses approved by order or judgement of the Probate Court, may not be considered.

As plaintiffs have finally conceded in their brief, the fee of $500 paid to the attorneys for Milton Gordon, Leah Gordon Seiffer and their children individually is not properly a claim allowable in Probate Court as an expense of administration, and hence is not a proper deduction from the gross estate here. Not so with the remaining items, however. The $250 fee paid to the attorney appointed to represent unborn children was by court decree directed to be paid from the trust estate. To the same legal effect was the $35.85 court costs required to be paid. The attorney fees for representing the trustees in construing the will, in preparing the claim for refund, and in trying this case, properly are considered expenses of administration under the laws of Missouri, and hence are deductible from the gross estate.

It follows that as to this Count V, the fee of $500 paid to the personal attorney of Milton Gordon and his sister and their families is disallowed. The $250 fee, the $35.85 court costs, and the attorney fee of ten per cent of the amount recovered in this proceeding is allowed.

In summary:

In Count I, judgment is to be entered in favor of the plaintiffs and against the defendant, as prayed in the complaint.

In Count II, judgment is to be entered in favor of the defendant and

against the plaintiffs in accordance with stipulation filed December 18, 1957.

In Count III, judgment is to be entered in favor of the plaintiffs and against defendant as prayed in the complaint, in accordance with stipulation filed December 18, 1957.

In Count IV, judgment is to be entered in favor of defendant and against the plaintiffs.

In Count V, judgment is to be entered in favor of plaintiffs and against defendant for an amount equivalent to $250 plus $35.85 plus ten per cent of the amount recovered by this action.

All requested findings of fact and conclusions of law, not included in this memorandum, are denied.

Form of judgment entry is to be submitted by plaintiffs within ten days. It is so ordered.