**Michael B. KENDIS, Plaintiff,**

v.

**Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant.**

**Sylvia Y. KENDIS, Plaintiff,**

v.

**Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant.**

**Nos. 13125, 13126.**

United States District Court
W. D. Missouri, W. D.

Sept. 30, 1961.

Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., for plaintiffs.

F. Russell Millin, U. S. Atty., Kenneth H. Taylor, Asst. U. S. Atty., Kansas City, Mo., for defendant.

R. JASPER SMITH, Chief Judge.

These combined cases are actions under Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. The two cases were consolidated for hearing in the Department and are consolidated for a decision here, since they involve common questions of fact and of law.

The final decision of the Secretary of Health, Education and Welfare consists of a revised decision by a hearing examiner rendered on November 8, 1960, which became final on December 15, 1960, when the Appeals Council denied the plaintiffs' request for review.

Plaintiffs dispute only that part of the hearing examiner's revised decision which affirmed his initial finding that the income derived by plaintiffs in 1955 from the optical business carried on by the plaintiffs as partners is excluded from "net earnings from self employment" since the partnership was held to have been engaged in the performance of service in the exercise of the profession of an optometrist. For taxable years prior to 1956 it is contended by defendant that that activity constituted service in the exercise of a profession excluded from the definition of trade or business under the provisions of Section 211(c) (5) of the Act as then in effect.

Plaintiffs filed applications for Old Age Benefits in January, 1951. On April 10, 1951, they were awarded monthly benefits effective September, 1950. Application was filed on December 3, 1957, and October 16, 1957, for recomputation of the benefit rates. These were disallowed initially and on reconsideration by the Bureau on the grounds that plaintiff had acquired only four of the six quarters of coverage after 1950 required for recomputation under Section 215(f) (2) of the Act. Applications for benefits filed by

Sylvia Y. Kendis based on her own earnings record were disallowed initially and on reconsideration on the ground that she had only four of the six quarters of coverage necessary for her to achieve a fully insured status under Section 214 (a) of the Act. The determinations were based on the finding that only four quarters of coverage could be established for each, based on 1956 partnership income; that their operation of the optical department at a Sears, Roebuck store did not constitute a "trade or business" prior to 1956, and that neither plaintiff nor his wife could be credited with quarters of coverage for the year 1957.

On reconsideration, quarters of coverage were allowed for 1957, but it was again determined that the Kendis partnership during the calendar year 1955 was engaged in the practice of optometry. This issue is the sole question presented for determination here.

The facts are undisputed. Plaintiff and his wife, doing business as a partnership, operated the optical department of a Sears, Roebuck store in Kansas City from 1939 until April 1, 1957. Plaintiff Michael B. Kendis was a graduate optometrist and had been licensed since 1920. He had previously practiced optometry in his own jewelry and optical retail establishment, and thereafter was employed by the Gate City Optical Company. At the time of his employment by Gate City Optical Company, it operated the optical department at the Sears, Roebuck store under a lease arrangement. Plaintiff Michael B. Kendis took over the business at the store as sub-lessee effective prior to January, 1940.

Under the terms of the sublease, Sears, Roebuck received 20 per cent of the gross receipts of the optical department, Gate City received 5 per cent of the gross receipts, and the partnership consisting of the two plaintiffs, received the balance. Sears, Roebuck provided the space, paid all the utility bills, handled the receipts and computed the percentages.

The business activity consisted of conducting eye examinations, prescribing lenses, grinding lenses, and selling frames, binoculars, sun glasses, opera glasses, thermometers and like matters. The refraction or fitting of glasses constituted the bulk of the business.

In 1952, as a result of surgery, plaintiff Michael Kendis' health became seriously impaired, and he found it impossible to continue to do eye examinations on customers. As the services of an optometrist were essential to the business, in October of that year the partnership hired Donald Eaden, a licensed optometrist, as General Manager and Optometrist at a weekly salary and a share in the profits of the business. In the employment contract plaintiff Michael Kendis agreed that he would "attempt so far as is humanly possible to cooperate and collaborate with the party of the second part at all times necessary." Another man was hired to do the dispensing and grinding of lenses. After the employment of these two individuals, plaintiff Michael Kendis no longer spent regular hours at the business, and finally visited the store only once or twice a week. He never waited on customers but limited his activities to supervision and checking over the books. Mrs. Kendis went to the store more often and did some work while there, waiting on customers, signing checks and ordering supplies. She also handled the bookkeeping and when necessary brought work home with her. Plaintiffs were in charge of the business and they made all final decisions and they had telephone contacts with customers and suppliers.

Plaintiffs contended that they were not engaged in the practice of optometry after October 1, 1952, and that the income they derived from the partnership engaged in the operation of a retail optical establishment in 1955 constituted "net earnings from self employment."

The hearing examiner found that based on the evidence in its entirety, the partnership was engaged in the practice of optometry, and that the practice of this profession was specifically excluded from "trade or business" by Section 211

(c) (5) of the Social Security Act for years prior to 1956. He further concluded that the partnership income derived by the parties from the optical business in 1955 was excluded from "net earnings from self-employment" and "self-employment income" by Sections 211(a) and 211(b) of the Act. The ultimate conclusion was that the parties could not be credited with any quarters of coverage for the year 1955.

Defendant contends that the foregoing decision is correct and being based on substantial evidence is binding on the Court. We are aware of the fact that if an examiner's findings of fact are supported by substantial evidence, there can be no substitution of the Court's judgment for his. Nevertheless, if it is apparent that the administrative decision is based upon conclusions which were not reasonably reached, or which resulted from improper conclusions of law which are unsupported by the evidence, the errors must be corrected.

On this basis, the decision in this case may not stand and must be reversed.

The pertinent portion of Section 211(c) (5) of the Social Security Act, in effect for years prior to 1956, is as follows:

"(c) The term 'trade or business' when used with reference to self employment income or net earnings from self employment, * * * shall not include * * *

"(5) The performance of service by an individual in the exercise of his profession as a(n) * * * optometrist * * * or the performance of such service by a partnership."

The only question here is whether under the undisputed facts the activities of plaintiffs constituted the "exercise of his profession as an optometrist." If so, the decision of the Administrator is correct and the decision must be affirmed.

Neither the federal statute nor the applicable Regulations purport to establish a federal definition for any of the excluded professions. In defining optometry and the other excluded professions the Rules and Regulations rely solely upon the law of the state in which the services are performed to determine whether such activities fall within one or more of the excluded professions. Thus the Regulations, Title 20, C.F.R., Section 404.1057(f) (1), provide:

"* * * this exclusion applies only if the individual meets the legal requirements, if any, for practicing his profession *in the place where he performs the* service * * *." (Italics supplied.)

There is nothing in the series of Regulations or the statute itself that demonstrates that the Social Security Act contemplated establishment of a federal standard as to what activities constituted the named professions. In fact, this Act is consistent with other acts, notably the Internal Revenue Act, under which by a long series of interpretations, the Courts have ruled consistently that definitions of status and property rights are to be determined by state law. See, for example, Gordon v. U. S., D.C.W.D.Mo.1958, 163 F.Supp. 542, and cases therein cited.

If the status of the partnership is determined by Missouri law, as it must be, the answer is clear. In State ex inf. McKittrick v. Gate City Optical Company, 1936, 339 Mo. 427, 97 S.W.2d 89, 90, the court explicitly held that the activities of an operator of an optical department at a Sears, Roebuck store, who conducted its business in the same manner as plaintiffs herein, did not constitute "practicing optometry within the meaning of the optometry code." The Court construed what is now Section 336.010 RS Mo., V.A.M.S. the statutory definition of the practice of optometry in Missouri.

The decision of the hearing examiner was predicated on the assumption, erroneous in law, that the activities of plaintiffs in these cases constituted the practice of optometry. Under control-

ling Missouri law, plaintiffs' partnership was not engaged in the practice of the profession of optometry in 1955.

That portion of defendant's finding to the effect that plaintiffs could not be credited with any quarters of coverage for the year 1955 is reversed. The case is remanded to the Secretary with directions to compute the "net earnings from self-employment" for both plaintiffs consistent with the views expressed in this opinion. Judgment will be entered accordingly.

It is so ordered.